Filed 6/18/26  P. v. Landeros CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID LANDEROS,<br><br>    Defendant and Appellant. | 2d Crim. No. B346992<br>(Super. Ct. No. 2008039700)<br>(Ventura County) |

In January 2010, David Landeros was convicted, by jury, of two counts of first degree murder and sentenced to two consecutive terms of life without the possibility of parole. We affirmed his convictions in *People v. Landeros* (Aug. 8, 2011, B223446) [non.pub.] (*Landeros*).  Landeros filed a petition for resentencing under Penal Code section 1172.6.[1]  After appointing counsel to represent appellant, the trial court denied his petition at the prima facie stage. It concluded he is ineligible for

---

[1] All statutory references are to the Penal Code unless otherwise stated.

resentencing as a matter of law because the record of his conviction establishes that he directly aided and abetted the murders and acted with the intent to kill.  Appellant contends the trial court erred because the jury could have found him guilty of second degree murder on a natural and probable consequences theory and then elevated the offense to first degree murder based on other, erroneous instructions. We affirm.

*Facts and Procedural History*

The following statement of facts is derived from the record of appellant's conviction, including the trial transcript, jury instructions and our opinion in appellant's prior appeal, *Landeros, supra,* B223446.  (*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*); *People v. Lopez* (2022) 78 Cal.App.5th 1, 13-14 (*Lopez*).)

Appellant and Cesar Navarette had known each other and been neighbors in the Lemonwood neighborhood of Oxnard since childhood.  In 2005, appellant cooperated with police against Navarette's brother in a murder investigation. Navarette learned of appellant's cooperation in 2008 and told others in the neighborhood about it.  Several weeks before the murder, a shot was fired from a house where appellant was present toward a group in which Navarette was present.

On the night of this murder, appellant and two of his friends went to a nearby bar for drinks.  Appellant drove the group in his SUV.  On the way back to their neighborhood, the group stopped at a Jack-in-the-Box where they saw Navarette in his pickup truck.  Luis Ruiz arrived and got into Navarette's truck.  Navarette drove back toward Lemonwood with appellant following.

2

Appellant chased Navarette's truck through the neighborhood. At one point, Navarette and Ruiz threw a bottle and a rock at appellant's SUV. After appellant's SUV was hit by an object, he stopped to check for damage before driving away.

Appellant called someone on his cell phone. One of appellant's passengers told an investigating police officer that he heard appellant say something like, "Come do me a favor." Shortly thereafter, appellant drove up to a small car. A man got out of the car carrying a shotgun and wearing a handkerchief over his face. The man got into the back seat of the SUV ending up on the passenger side.

Appellant drove back to where they had last seen Navarette, which was Ruiz's house. By that time, Ruiz had come out of the house to the front patio. His mother followed him, pleading with him to come back inside. Appellant drove slowly past the house. One of his passengers heard appellant say, " 'There he is, shoot,' " or words to that effect. The SUV's rear window went down and the man with the shotgun fired toward Ruiz's house. That shot hit both Ruiz and his mother who was standing directly behind him. Both victims perished.

The prosecution's theory of the case was that appellant and the gunman planned to kill Navarette, to stop him from disrespecting appellant. The gunman shot the wrong person, Ruiz, and his mother was caught in the blast. Defense counsel argued the shooter acted independently.

The Jury Instructions. The trial court instructed the jury on aiding and abetting (CALCRIM Nos. 400, 401), murder with express or implied malice aforethought (CALCRIM No. 520), first and second degree murder (CALCRIM No. 521), transferred intent (CALCRIM No. 562), murder on a natural and probable

consequences theory (CALCRIM No. 403) and assault with a deadly weapon. (CALCRIM No. 875). The jury was also instructed on the special circumstance of multiple murders. (CALCRIM Nos. 702, 704, 705 and 721.)

CALCRIM No. 401 informed the jury that, "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: 1. The perpetrator committed the crime; 2. The defendant knew that the perpetrator intended to commit the crime; 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; AND 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

CALCRIM No. 520 informed the jury that, to prove appellant guilty of murder, "the People must prove that: 1. The defendant aided and abetted the commission of an act that caused the death of another person; AND 2. When the defendant acted, he had a state of mind called malice aforethought; AND 3. The killing was without lawful excuse or justification." It further informed the jury that the two kinds of "malice aforethought" are express malice and implied malice. "Proof of either is sufficient to establish the state of mind required for murder. A person acts with express malice if he unlawfully intended to kill. A person acts with implied malice if: 1. He intentionally committed an act; 2. The natural and probable consequences of the act were dangerous to human life; 3. At the time he acted, he knew his act was dangerous to human life; AND 4. He deliberately acted with conscious disregard for human life."

A separate instruction addressed the doctrine of transferred intent. It informed the jury, "If the defendant

4

intended to kill one person, but by mistake or accident killed someone else instead, then the crime, if any, is the same as if the intended person had been killed." (CALCRIM No. 562.)

To instruct the jury on the distinction between first and second degree murder, the trial court modified CALCRIM No. 521 to define willfulness, premeditation and deliberation by reference to the gunman's state of mind, rather than appellants. It informed the jury that murder is either of the first or second degree. "It is first degree murder if the People have proved that the gunman acted willfully, deliberately, and with premeditation. The gunman acted willfully if he intended to kill. The gunman acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The gunman acted with premeditation if he decided to kill before committing the act that caused death. . . . All other murders are of the second degree."

CALCRIM No. 403 instructed the jury on the now invalid natural and probable consequences theory. The jury was informed, "If you do not find that the shooter unlawfully intended to kill Cesar Navarette with express malice, you may decide that an unlawful killing occurred with implied malice as defined in the earlier instruction. To prove the defendant is guilty of aiding and abetting second degree murder based on implied malice, the People must prove that: 1. The defendant is guilty of aiding and abetting an assault with a firearm; 2. During the commission of the assault with a firearm, the gunman committed an unlawful killing; AND 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that an unlawful killing was a natural and probable consequence of the

5

commission of the assault with a firearm." CALCRIM No. 875 defined the elements of assault with a firearm.

Finally, the jury was instructed on the special circumstance of multiple murders. The trial court informed the jury that, if it found that appellant was guilty of first degree murder "but was not the actual killer, then, when you consider the special circumstances of multiple murder, you must also decide whether the defendant acted with the intent to kill. [¶] In order to prove these special circumstances for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill." The jury was further informed that, "If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstances of multiple murder to be true." (CALCRIM No. 702.)

During deliberations, the jury asked, "For a first degree murder charge does there have to be "express malice," or can it be either "express" or "implied." Likewise, if you find there is "express" malice, does that automatically mean it's first degree and not second degree. We need clarification." The trial court responded, "1. For [first] degree murder, it may be express or implied malice. 2. No. For the degree of murder please see instruction 521 at page 36."

<u>Verdict and Sentence</u>. The jury convicted appellant of the first degree murder of both Luis Ruiz and his mother, Rosa Ruiz. It also found the special circumstances of multiple murders to be true with respect to both victims. The trial court sentenced appellant to life without the possibility of parole.

6

Direct Appeal. We affirmed appellant's conviction in an unpublished opinion. (*Landeros, supra,* B223446.) We agreed the trial court erred when it instructed the jury that it should consider the gunman's state of mind, rather than appellants, when determining the degree of murder. We concluded, however, that the error was harmless beyond a reasonable doubt because the jury necessarily determined that appellant acted with intent to kill, premeditation and deliberation, under other instructions. First, the special circumstances instruction (CALCRIM No. 702) required the jury to find appellant personally "acted with the intent to kill." Second, we concluded the jury necessarily found appellant acted with premeditation and deliberation under the aiding and abetting instruction. (CALCRIM No. 401.)

The Petition for Resentencing. Appellant contended in the trial court that he had alleged a prima facie case for relief under section 1172.6. He theorized that the jury might have found that appellant and the gunman shared an intent to kill Navarette but the gunman later independently formed the intent to commit an assault with a firearm, which intent was not shared by appellant. Under that circumstance, the jury could have imputed the gunman's intent to appellant and convicted him of murder based on the natural and probable consequences of the assault.

The trial court rejected this contention. It reasoned that the jury necessarily found appellant directly aided and abetted the murder with malice aforethought because it found appellant guilty of first degree murder and found true the multiple murder special circumstance.

7

*Discussion*

Appellant contends the trial court erred in denying his petition for resentencing at the prima facie stage because the jury might have found him guilty of murder on a natural and probable consequences theory and then elevated the offense to first degree murder based on the trial court's erroneous modification of CALCRIM No. 521. We review the trial court's order de novo and affirm. (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.) We conclude that the record of conviction demonstrates the jury necessarily found that appellant had the intent to kill and that he acted willfully, deliberately and with premeditation. Consequently, the trial court correctly concluded appellant is ineligible for relief as a matter of law. Nothing in the recent opinion in *People v. Lopez* (2026) 19 Cal.5th 639, alters our analysis.

Effective in 2019, Senate Bill 1437 (2017-2018 Reg.Sess.) altered California's substantive law of murder by narrowing the felony murder rule and by eliminating liability for murder under the natural and probable consequences doctrine. (*Curiel, supra,* 15 Cal.5th at pp. 448-449.) Section 188, subdivision (a), defining the mental state required for murder, now provides that, except in cases of felony murder as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) This statutory change eliminates the natural and probable consequences doctrine as a theory of liability for murder. "[U]nder prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable

8

consequence of the intended assault.  [Citation.]  The defendant need not have intended to murder or even subjectively appreciated the natural and probable consequences of the intended crime.  [Citation.]  Senate Bill 1437 ended this form of liability for murder."  (*Curiel, supra,* at p. 449.)

Section 1172.6 allows a person convicted of felony murder or murder under the natural and probable consequences theory to petition to have their conviction vacated and be resentenced when, among other conditions, "The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."  (*Id.*, subd. (a)(3).)  The first step in this process is for the convicted person to file a petition declaring that he or she meets all of the requirements for relief under the statute. It is then the trial court's responsibility to determine whether the petition states a prima facie case for relief.  (*Id.*, subd. (c).)

At the prima facie stage, the question is whether the petition and record of conviction "establish conclusively that the defendant is ineligible for relief . . . ."  (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)  If so, the trial court may dismiss the petition without issuing an order to show cause.  (*Curiel, supra,* 15 Cal.5th at p. 450.)  "While the trial court generally should not reject a petitioner's factual allegations at the prima facie stage, ' "if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]  'In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion." ' [Citation.]"  (*People v. Morales* (2024)

9

102 Cal.App.5th 1120, 1130.) The record of conviction includes the statement of facts in an appellate opinion, "the trial evidence, the jury instructions, and closing arguments of counsel. [Citation.]" (*Lopez, supra,* 78 Cal.App.5th at pp. 13-14.)

A person is ineligible for relief under section 1172.6 as a matter of law where the record of conviction establishes that he or she was convicted of murder on a theory that remains valid after the 2019 changes to sections 188 and 189. (§ 1172.6, subd. (a)(3); *Strong, supra,* 13 Cal.5th at p. 708.) Direct aiding and abetting remains a valid theory of liability for murder. (*Curiel, supra,* 15 Cal.5th at p. 462; § 189, subd. (e)(2).) Transferred intent also remains valid. (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 673.)

Appellant contends he stated a prima facie case for relief because the jury could have found him guilty of first degree murder under the now invalid natural and probable consequences doctrine by applying CALCRIM No. 403 and the trial court's erroneously modified CALCRIM No. 521. In this scenario, the jury would have found that appellant did not "unlawfully intend[] to kill Cesar Navarette with express malice," but that the killing occurred "with implied malice . . . ." (CALCRIM No. 403.) It would then have found "the defendant is guilty of aiding and abetting second degree murder based on implied malice" because he aided and abetted the gunman's assault with a firearm and the victims' deaths were the natural and probable consequence of that assault. (*Ibid.*) Appellant theorizes the jury could then have "elevated" the offense from second degree to first degree murder by applying CALCRIM No. 521 to find the perpetrator "acted willfully, deliberately, and with premeditation" when he committed the assault. (CALCRIM No.

10

521.)  If this occurred, the jury would have imputed the perpetrator's mental state to appellant and convicted appellant of first degree murder based on that mental state.

But this theory cannot be squared with the jury instructions and the jury's actual verdicts.  The jury found appellant guilty of first degree murder and found the multiple murder special circumstances allegations to be true.  To reach these verdicts, the jury could not have relied on the natural and probable consequences doctrine described in CALCRIM No. 403 because that instruction was expressly limited to second degree murder.[2]  Nothing in the instructions permits the jury to find appellant guilty of second degree murder and then "elevate" the offense to first degree murder by finding that either appellant or the perpetrator acted with a different mental state.  If the jury had concluded, as appellant theorizes, that the perpetrator intended only to commit an assault with a firearm, the erroneously modified CALCRIM No. 521 required it to find that a second degree murder occurred.  Appellant would then have aided and abetted a second degree murder.  In that circumstance, the perpetrator would not have acted "willfully," as required for

---

[2] As relevant here, the instruction states, "To prove that the defendant is *guilty of aiding and abetting second degree murder based on implied malice*, the People must prove that: 1. The defendant is guilty of aiding and abetting an assault with a firearm; 2. During the commission of the assault with a firearm, the gunman committed an unlawful killing; AND 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that an unlawful killing was *a natural and probable consequence* of the commission of the assault with a firearm." (CALCRIM No. 403, emphasis added.)

11

first degree murder, because he would have acted with the intent to commit an assault, not with the intent to kill.

Moreover, to find the special circumstances allegations true, the jury had to find that appellant, not the shooter, "acted with the intent to kill."[3] (CALCRIM No. 702.) "Although malice may include concepts that are not included in willfulness, willfulness does not include any concept that is not contained in express malice. An intent to kill is the ' "functional equivalent" ' of *express* malice." (*People v. Moon* (2005) 37 Cal.4th 1, 29.) When it found the special circumstances allegations true, the jury necessarily found that appellant acted willfully.

In addition, the jury was instructed that, to find appellant guilty as an aider and abettor, it had to find he "knew that the perpetrator intended to commit the crime;" and he "intended to aid and abet the perpetrator in committing the crime . . . ." (CALCRIM No. 401.) It was further instructed that aiding and abetting occurs when the defendant "knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid . . . the perpetrator's commission of that crime." This is the equivalent of a finding that appellant acted with premeditation and deliberation. "It would be virtually impossible for a person to know of another's intent to murder and decide to aid in accomplishing the crime without at least a brief period of deliberation and premeditation, which is all that is required." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1166; see also *People v. Lee* (2003) 31 Cal.4th 613, 624 [aider and abettor to

---

[3] The special circumstances instruction also states, "[t]he People do not have to prove that the actual killer acted with the intent to kill in order for these special circumstances to be true." (CALCRIM No. 702.)

attempted murder necessarily harbors mental state "at least approaching deliberation and premeditation . . ."].)

We note that nothing in the prosecutor's closing arguments encouraged the jury to rely on the natural and probable consequences doctrine or to find that appellant aided and abetted a crime other than murder. Instead, the prosecutor argued, "I don't think you ever get to second-degree natural and probable consequences murder because I don't think you will get past first-degree willful, deliberate, and premeditated murder." "The defendant had knowledge and intent to kill Cesar Navarrete . . . . He caused this shooting to happen. It would not have happened but for his help, but for his conduct, but for the defendant calling the shooter to come to the scene, but for the defendant picking up the shooter, and but for the defendant driving the shooter past the place where Cesar Navarette was last seen. [¶] . . . All of those facts indicate deliberation and premeditation."

Appellant contends it is possible he was convicted on an implied malice natural and probable consequences theory because, in response to a question, the trial court informed the jury that either express or implied malice would suffice for first degree murder. Like his previous argument, however, this contention ignores the jury's actual findings. When it found the multiple murder special circumstances allegations true, the jury found that appellant acted with the intent to kill. This finding necessarily means the jury did not apply CALCRIM No. 403, the natural and probable consequences instruction. That instruction begins by stating, "If you *do not find* that the shooter unlawfully intended to kill Cesar Navarette with express malice, you may decide that an unlawful killing occurred with implied malice as

13

defined in the earlier instruction." (*Ibid.*, emphasis added.)  Had the jury found appellant did not act with express malice, it would have found the special circumstances untrue.

*Conclusion*

The record of appellant's conviction establishes as a matter of law that he is ineligible for relief under section 1172.6 because the jury necessarily found that he personally acted with malice aforethought.  (§§ 188, subd. (a)(3), 1172.6, subd. (a)(3); *Curiel, supra,* 15 Cal.5th at p. 450.)

The order denying appellant's petition for resentencing pursuant to section 1172.6 is affirmed.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

14

Derek D. Malan, Judge

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, William Quest, Snr. Dep. Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kristen J. Inberg, Supervising Deputy Attorney General, Megan Moine, Caitlin Ross, Deputy Attorneys General, for Plaintiff and Respondent.